MARÍA MERCEDES DELGADO, Plaintiff and Appellee, v. JOSÉ M. RODRÍGUEZ QUIÑONES, Defendant and Appellant.

No. 10077. Argued February 1, 1950.—Decided May 24, 1950.

416

*Antonio Reyes Delgado* for appellant. *G. Zeno Sama* for appellee.

MR. CHIEF JUSTICE DE JESÚS delivered the opinion of the Court.

The plaintiff and the defendant are owners, respectively, of two urban properties adjacent to each other, situated in Coll y Toste Street of Arecibo. Each property consists of two houses; those fronting the street are two-story buildings and those in the rear are one-story. An alley two meters wide separates plaintiff's property from defendant's. The houses belonging to the latter have certain openings and windows on the side abutting on plaintiff's houses, overlooking said alley. This alley, as alleged by plaintiff and accepted by defendant, belongs to the former. In order to compel the defendant to cover said openings and windows an action of denial of servitude was brought which was granted after a trial on the merits.

The fundamental ground on which this appeal is based is directed against the weighing of the evidence.

For purposes of clarity it is necessary to resort to the entries in the registry of property in order to learn

the history of the alley. We shall begin with defendant's property. Originally, it was recorded in the *Antigua Anotaduría de Hipotecas* but its first record appears in the registry of property on August 26, 1890. In this entry it was described as a house with its own lot, the second story being of wood while the first floor was of masonry with a flat roof, the house measuring "20 varas in front, that is, 16.720 meters and 15½ varas in depth, equivalent to 12.958 meters, the lot having the same area as the house, *plus the regulation alley space.*" (Italics ours.) The property continued to be described in the registry of property in the same fashion until in its 16th entry made on April 28, 1936 by virtue of a notarial deed executed by Eulogia Colón Alvarez, at that time owner of the property, it was stated that a survey of the lot and house made by Civil Engineer Quintín M. Estrella on April 1, 1936, with the consent of the adjoining owners, showed an increase in area of 158.79 square meters. The property was then described as measuring 18.57 meters on the north; 16.70 meters on the south; 21.46 meters on the east, and 21.46 meters on the west, having an area of 375.22 square meters. It was further stated *that the lot had the same area as the house.*[1] In the 19th entry, made on February 20, 1940, the same property was described thus:

"Urban. Property consisting of house and lot described in its sixteenth entry, as in the present document, wherein the former house was almost totally destroyed and in its place a two-story building of reinforced concrete was erected with more or less the same area as the lot. . . ."

If in 1890, when the first entry was made, the house measured 16.72 meters in front by 12.958 meters in depth "plus the regulation alley space" and in 1936 it was stated in the 16th entry that the lot had the same area as the house, and it was said that on the north which is the front, it measured 18.57 meters instead of 16.72 meters and in depth 21.46 meters instead of 12.958 meters as stated in the first entry,

---

[1] Compare these measurements with those of the first entry.

it is logical to conclude that during the period covered between both dates the house must have been reconstructed so that the building covered the so-called "regulation alley". And assuming that the windows existed in the original house overlooking the "regulation alley", however, upon reconstructing the house and making its wall adjacent to plaintiff's on the boundary line, causing said regulation alley to disappear, the defendant had no right to open the windows. Notwithstanding the time that might have elapsed from the opening of such windows until February 12, 1948 when the complaint in this case was filed, the defendant could not have acquired the servitude by prescription, simply because the formal or obstructive act provided by § 474 of the Civil Code[2] did not exist until January 29, 1947.[3]

The defendant lays stress on the fact that the lot is not mentioned in the first entry of plaintiff's property, and that only the house which at that time was a two-story structure, was described. It is in the 4th entry made on October 10, 1904 that the lot is described for the first time, and which, according to that entry, measured 18.50 meters in front by 25 meters in depth.

This fact does not mean that the lot belonged to a different owner. Or, that one of the former owners of plaintiff's house appropriated for himself a strip of land of the lot of the house which now belongs to the defendant. Several facts militate against this last hypothesis: the considerable enlargement of defendant's house; that plaintiff's house,

---

[2] Section 474 of the Civil Code provides:

"In order to acquire by prescription the servitudes referred to in the preceding section, the time of possession shall be counted, in positive servitudes, from the day on which the owner of the dominant tenement or the person who has made use of the servitude shall have begun to exert it over the servient tenement; *and in negative servitudes, from the day on which the owner of the dominant tenement shall have, by a formal act, prohibited the owner of the servient tenement to execute the act which would be legal without the servitude.*" (Italics ours.)

[3] The formal or obstructive act was the letter which Fidel Sevillano wrote, on behalf of the plaintiff, to defendant requiring him to cover the openings and windows.

from the very first time that it was recorded in 1883, was a two-story building and that the stairway to the second floor is situated precisely in the alley in question. It is very significant that defendant's windows overlooking the alley should open inward. If the alley were part of defendant's lot, why stand for the inconvenience of having the windows open inward? We can not lose sight of the fact that since every property is presumed free of liens, once the plaintiff establishes in an action of denial of servitude his title over the property which he alleges to be free of lien, the burden is upon defendant to prove the existence of the servitude. *Ramos* v. *Viejo*, 66 P.R.R. 607; *Rosado* v. *Municipality*, 59 P.R.R. 736; *Balzac* v. *Torres*, 68 P.R.R. 908. But in the present case the entry in the registry of property and the physical facts are against him. For these reasons we can not share defendant's opinion in holding that the district court erred in stating in its findings of fact that the alley in question was never a part of the lot.

 Our conclusion simplifies the problem considerably and we find it unnecessary to discuss several questions which appellant raises all of which are based on the theory that the alley was originally a part of the lot.

Appellant contends that upon describing in the complaint some of the windows which plaintiff seeks to have covered, it is not alleged that they have a direct view to plaintiff's property. This is true, but it is also true that it is stated therein, and it was proved, that those windows were opened in the east wall of defendant's house which extends almost parallel to the west wall of plaintiff's house. Under these circumstances those windows necessarily have a direct or front view to plaintiff's property, for when people use them, they hold their head in a natural straight position, in contradistinction to oblique views also called side or lateral views, where, because the windows are opened at an angle with the dividing line of the properties, they must turn their head to one side in order to use them. Manresa, *Comenta-*

*rios al Código Civil Español* (3d ed. 1910) vol. 4, p. 777. Likewise it can not be said that fixed blinds have no direct view because in order to see plaintiff's property it is necessary to look downward or upward. This is not the meaning of direct views. Otherwise, the owner of a house of more than one flight adjoining a lower house, could open windows in a wall parallel to his neighbor at a distance of less than 2 meters from the boundary line provided those windows are higher than the adjoining property. *Cf. Revista de Derecho Privado*, vol. 4, p. 85. The most that is allowed by law is that the owner of a wall not a party wall adjoining another's property may open windows or openings therein, "to admit light, *at the height of the ceiling joists or immediately under the ceiling*, of the dimensions of thirty centimeters square, and, in any case, with an iron grate embedded in the wall and a wire screen." (Italics ours.) Section 517 of the Civil Code. The openings and windows in this case do not comply with those requirements.

The judgment will be affirmed.

Mr. Justice Snyder did not participate herein.